IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 19, 2012

## WILLIE A. COLE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2005-C-2386      Steve Dozier, Judge**

**No. M2011-01676-CCA-R3-PC - Filed January 25, 2013**

The petitioner, Willie A. Cole, appeals the denial of his petition for post-conviction relief. In this case, the petitioner was convicted of first degree murder and tampering with evidence conviction. He was sentenced as a repeat violent offender to a term of life without the possibility of parole for the murder conviction and to six years for the tampering with evidence. On appeal, he contends that the denial of his petition was error because the evidence established that he was denied his right to the effective assistance of counsel. Following review of the record, we find no error in the denial and affirm the decision of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J. and THOMAS T. WOODALL, J., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Willie A. Cole.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Amy Hunter Eisenbeck, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### Procedural History and Factual Background

The basic facts underlying the petitioner's convictions, as recited by this court on direct appeal, are as follows:

On June 19, 2005, [the victim's daughter] discovered her father,

seventy-one-year-old Joseph Banks, dead of multiple stab wounds in his Nashville apartment. The sixty-five-year-old [petitioner] lived in the next-door apartment of the high-rise retirement building, Edgefield Manor, and was interviewed by police investigators as part of their canvass of the building. During the interview, which took place in the [petitioner's] apartment, a police investigator noticed that the [petitioner's] boot tread appeared to match a bloody shoe print found in the victim's apartment. The [petitioner] consented to a search of his apartment and turned over to the investigator his recently polished boots, which tested positive for the presence of the victim's blood. A subsequent search of his apartment uncovered, among other things, three bottles of shoe polish and four bottles of bleach as well as signs of the kitchen floor's having been recently bleached. Through conversations with other residents of the building, investigators learned that the [petitioner] had been extremely jealous and possessive of his girlfriend, had accused the victim of having an affair with her, had threatened and assaulted the victim in the past, and had stated his intention of killing the victim in the week preceding the murder. . . .

*State v. Willie Andrew Cole*, No. M2007-02896-CCA-R3-CD (Tenn. Crim. App., at Nashville, June 16, 2009). Based upon these facts, the petitioner was indicted by a Davidson County grand jury for premeditated first degree murder and tampering with evidence. Following a trial by jury, the defendant was convicted as charged. Thereafter, he was sentenced as a repeat violent offender to concurrent terms of life without the possibility of parole for the murder conviction and six years for the tampering with evidence conviction. Additionally, the sentences were ordered to be served consecutive to a prior life sentence for murder which the petitioner had been on parole for. Following the denial of his motion for new trial, the petitioner filed a direct appeal with this court, after which the convictions and sentences were affirmed. *Id*.

Next, the petitioner filed a timely pro se petition for post-conviction relief, asserting approximately fifty instances of what he alleged were ineffective assistance of counsel. Following the appointment of counsel, an amended petition was filed with the court. A hearing was held on two separate days, at which the petitioner, trial counsel, the initial attorney appointed in his case, and the housing manager from the petitioner's and the victim's apartment complex testified.

Ms. Ava Christian testified that she was employed by Metro Development Housing as the house manager at Edgeville Manor, the complex where the petitioner and the victim had both resided. She recalled that she had spoken with several different investigators following the incident. She also indicated that she was subpoenaed to testify at trial, but she

was never called as a witness. Ms. Christian testified that she had tried to review the petitioner's file in anticipation of testifying at the hearing but noted that it was very large.

Ms. Christian did not find any record of or recall an incident where Ms. Pam Wilson or Mr. Henry Dean had reported to her that the petitioner had threatened to kill the victim. She stated that, if someone had done so, she would have instructed them to contact the police. Ms. Christian also testified that she did recall complaints against the petitioner by Ms. Wilson because the petitioner was constantly arguing with his girlfriend. While she never officially cited the petitioner, she did speak with him about his drinking.

Also testifying at the hearing was the assistant public defender who was initially appointed to represent the petitioner in the case. She stated that she was appointed early in the case and continued to represent the petitioner until a time near the start of the trial. She indicated that she was removed from the case, at the petitioner's request, in order to allow the petitioner to have new counsel in whom he could have confidence. Initial counsel stated that, following her withdrawal from the case, she would have made her file available to trial counsel for copying. She also testified that the original file in the case had been misplaced after she left the Public Defender's Office, and she was unable to recall specific details on certain matters. The office had attempted to make a duplicate file with the information which they were able to obtain.

Initial counsel recalled attending the petitioner's parole revocation hearing in his separate case, which contained information relevant to the investigation of the instant murder. She further recalled that she was given great leeway in questioning the detective who investigated the petitioner's pending murder charge, and she considered this information to be an excellent source of discovery. Although she could not recall the specifics, the duplicate file in her possession indicated that the tape of the parole revocation hearing had been requested but not received. Thus, she was unable to ascertain whether trial counsel had this information. Initial counsel also recalled that she had filed an ex parte motion for funds to secure expert assistance for DNA analysis with regard to the petitioner's boots. Although the order was granted, no expert was ever employed, and she could not recall the reason. Moreover, she could recall no specific conversations with trial counsel which might have occurred on the subject.

Trial counsel testified that he took over the petitioner's representation after initial counsel was removed. He stated that he met with the petitioner on several occasions and reviewed all discovery materials with him. Trial counsel testified that the theory of the case was always one of innocence as the petitioner claimed he was not present at the time of the crime. The services of an investigator were employed in preparation of the case. At some point, a motion was made to allow trial counsel's removal per the petitioner's request.

-3-

However, the motion was not well-taken by the trial court, and he continued his representation through the direct appeal of his conviction.

With regard to Ms. Christian, trial counsel testified that she was interviewed by the defense investigator and stated that she was aware of no problems between the petitioner and the victim. During the trial, trial counsel intended to call her as a defense witness. However, upon expressing his intent to do so, he was presented with certain materials from the State which changed his mind, as they were not favorable to the petitioner's case.

Trial counsel testified that he was aware that there were three different times of death referenced in the case materials. The indictment alleged one day, an estimate by the medical examiner indicated another, and finally the date that the petitioner was discovered and pronounced dead was mentioned. The petitioner requested that he file a bill of particulars in order to ascertain the exact time of death. When trial counsel did not do so, the petitioner filed a motion pro se, which was never addressed by the court. Trial counsel indicated he saw no need for such a motion, as he believed it added an ambiguity in the State's case. He did acknowledge that the petitioner had alibis for brief periods of the relevant time. Specifically, trial counsel recalled viewing a surveillance video from a liquor store that was taken at around one of the later noted times of death. However, trial counsel did not feel the tape was sufficient to provide an alibi defense for the petitioner. The petitioner also claimed to be at a gathering during one window of time. However, trial counsel noted that this "alibi" was only for a two-to-three hour period in the middle of the time, and he did not feel it was sufficiently viable to support an alibi defense.

Trial counsel did not recall that the petitioner had ever requested a mental health examination or defense, and he saw no signs of a mental defect. He also testified that he was not made aware of any prior mental issues by the petitioner. Trial counsel indicated that, at one point, he had intended to have the petitioner evaluated but then chose not to do so. He felt it was not a prudent decision to pursue such a defense when the defense was that the petitioner did not commit the murder. He believed it would not aid the defense as a mental health defense was inconsistent with the chosen theory of innocence.

Trial counsel also recalled that there were fingerprints found in the blood at the crime screen. The State did not assert that the fingerprints belonged to the petitioner, and trial counsel felt that it was the State's burden to show that. He did not conduct independent testing in an attempt to show that they were not the petitioner's. The State also took fingernail clippings from the victim to test for possible DNA evidence, but none was introduced at trial. Trial counsel again did not attempt to conduct independent testing to determine if the petitioner's or a third-party's DNA was present. While he was sure it was discussed, trial counsel could not recall any specifics conversations with the petitioner about

-4-

forensic testing. At some point during trial counsel's testimony, the court noted that it had approved an order for DNA testing when the petitioner was represented by initial counsel.

Trial counsel testified that Detective Batey had testified at the preliminary hearing that he had seen "dried red-brown stuff" on the petitioner's boots. However, he did not mention this at the trial. Trial counsel said he chose not to cross-examine the detective on that because he did not feel it would serve to discredit the detective as he could testify he simply forgot to mention it. Moreover, it was not evidence which weighed in favor of the petitioner. Trial counsel was aware that the petitioner's boots had been taken unprotected into the crime scene, and he heavily cross-examined the detective on that matter. In fact, trial counsel noted that he filed a motion to suppress based upon the fact that the boots were introduced unprotected. Trial counsel also specifically testified that he did not request any independent DNA testing be done on the sole's of the petitioner's boots.

Trial counsel also stated that he listened to the petitioner's statement to police to see if there was sufficient evidence to challenge its voluntariness based upon the petitioner's claim of intoxication. However, trial counsel was unable to determine that such evidence was established by the tape and, further, other witnesses said the petitioner was not intoxicated. He also felt that there was not enough evidence to support a request for a jury instruction on intoxication during the trial.

Trial counsel recalled that Henry Dean testified at trial and stated that he had had the petitioner arrested and taken away. However, there was no evidence to confirm this from either the State or the defense. Trial counsel testified that he did question the witness about the fact that there was no proof of the alleged arrest during cross-examination. Trial counsel also testified that he conducted cross-examination of State witnesses regarding discrepancies between the steak knives found in the petitioner's kitchen and the steak knife found in the garage that was used as the murder weapon. Specifically, at the time the knife used to stab the victim was introduced at trial, it was much darker in color than the knives found in the petitioner's kitchen. Even recognizing that the difference in color could have been caused from the fingerprint dust, trial counsel highlighted the discrepancy during cross-examination. He did further note that, although the color was different, the knife found in the trash was otherwise consistent with the knives found in the petitioner's apartment. Trial counsel also believed that he cross-examined Detective Batey on a discrepancy between the search warrant and his trial testimony as to whether there were bloody footprints in the hall outside the victim's apartment. He also testified that he cross-examined Pam Wilson regarding conflicts in her testimony as well. He did not seek a special jury instruction on witness credibility based upon Ms. Wilson's drug usage, but he did request the general credibility instruction based upon the various discrepancies in the record.

Trial counsel testified that he filed a motion to exclude expert testimony regarding a match between the petitioner's boot prints and those found at the crime scene. The motion was successful in that he was able to prevent a Tennessee Bureau of Investigation (TBI) witness from testifying that comparisons between the two indicated a positive match. However, that did not exclude all evidence regarding the boot prints.

The last witness called was the petitioner himself. He began his testimony by noting that he had requested that trial counsel file a Bill of Particulars regarding the different times of death attributed to the victim which were provided in the discovery materials. The petitioner stated that he wanted this issue resolved because he had an alibi for some of the periods of time, specifically on February18 when he was at a bar-b-que. When trial counsel failed to file the requested motion, the petitioner, acting pro se, filed one with the court, but it was never addressed or resolved.

The petitioner next stated that he had previously been diagnosed as mentally ill in the state of New York. He testified that Pilgrim Psychiatric Hospital declared him insane in 1967 when he was tested there after being charged with murder. The petitioner also stated that he had seen a psychiatrist while he was incarcerated in the Tennessee Department of Correction from 1977 to 2000 on yet another murder charge. He was unable to recall his exact diagnosis but indicated he had been prescribed various medications during the period. The petitioner requested that trial counsel have him evaluated in preparation for trial. Trial counsel did bring the matter to the court's attention, and a continuance was granted for the purpose of seeking an evaluation. However, no evaluation was ever done, despite the fact that the petitioner informed trial counsel that he had trouble remembering things and suffered from "black-out" periods when he drank excessively.

The petitioner also testified that he requested trial counsel to have the fingerprints found in blood at the crime scene tested to show that a third person was responsible for the crime. According to the petitioner, the request was ignored. The petitioner also requested that DNA testing be performed on the blood and nail clippings, but that request was not granted. The petitioner also testified that trial counsel failed to obtain a video surveillance tape from a local liquor store, which the petitioner claimed would show his attire and that he was drunk on June 17 and 18.

The petitioner testified in regard to a discrepancy between the affidavit for the search warrant and testimony at trial. In the affidavit, Detective Batey stated that there were bloody footprints in the hallway outside the victim's door. However, at trial the detective stated that there were no footprints in the hallway. The petitioner acknowledged that trial counsel had filed a motion to suppress evidence, but he failed to bring out the discrepancy at trial. The petitioner also stated that he wanted DNA testing done on his boots because they were taken

unprotected into the crime scene, as seen in various evidentiary photographs. However, it was brought out by the post-conviction court that the State's DNA expert had done such testing on the boots, but the results had been excluded on trial counsel's motion. The petitioner insisted that he wanted his own DNA testing performed and admitted into evidence so trial counsel should have complied with his request. The petitioner testified that he wanted the testing done, "good or bad," because he wanted an open and honest defense. He specifically stated that he believed that the blood on the boots had been planted.

The petitioner also faulted trial counsel for failing to impeach the testimony of Mr. Dean, who testified that he had had the petitioner arrested. He asserted that trial counsel should have introduced the fact that there was no arrest report found. The petitioner also stated that he did not agree with trial counsel's explanation regarding the discrepancy in the color of the knives. He did not believe that the difference was caused by fingerprinting dust. He believed trial counsel should have objected to the admission of the knives. The petitioner also testified that he had informed trial counsel that he was extremely intoxicated the weekend of the murder and requested that a jury instruction be given on intoxication. That instruction was not given. He also faulted trial counsel for failing to object when Ms. Wilson testified that the petitioner had beaten up Ms. Marchbanks, evidence which had been previously excluded after a successful 404(b) motion had been filed by trial counsel. The petitioner also asserted that trial counsel failed to call multiple witnesses for the defense.

On cross-examination, the petitioner acknowledged that if several of the things he requested had been done, it could have resulted in a problem for the defense. For instance, he admitted it would have been a problem for the defense if his DNA had been conclusively established to have been at the crime scene. He also acknowledged that the alibi he had on June 18 would not have been that helpful to his case. He maintained, however, that trial counsel should have pursued the issue of competency. However, he was able to answer a series of questions asked at the post-conviction hearing which indicated that he was competent, and he specifically stated that he never intended to pursue a defense of insanity.

After hearing the evidence presented, the post-conviction court entered a written order denying relief. The petitioner has now timely appealed that denial.

**Analysis**

On appeal, the petitioner contends that he was denied his right to the effective assistance of counsel and that post-conviction relief should have been afforded. In order to obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103 (2010); *Howell v. State*, 151

S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner must prove allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

A criminal defendant has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and Article I, Section 9, of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. To prove ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice to the defense. *Strickland*, 466 U.S. at 687-88. Failure to satisfy either prong results in the denial of relief. *Id.* at 697.

For deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms, despite a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 688-89. "In other words, the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The petitioner must prove that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. When reviewing trial counsel's performance for deficiency, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). However, "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Prejudice in turn requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*,

466 U.S. at 694. In *Strickland*, the Supreme Court noted that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. The court clarified that prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

A claim of ineffective assistance of counsel raises a mixed question of law and fact. *Burns*, 6 S.W.3d at 461; *Grindstaff*, 297 S.W.3d at 216. Consequently, this court reviews the trial court's factual findings de novo with a presumption of correctness, unless the evidence preponderates against the trial court's factual findings. *Grindstaff*, 297 S.W.3d at 216. But the trial court's conclusions of law on the claim are reviewed under a purely de novo standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

In the argument section of his brief, the petitioner cites to relevant post-conviction law and then proceeds to make statements, with little or no supporting argument, as to the ways in which he believes trial counsel was ineffective. That section, in its entirety, is as follows:

Even though the trial court entered an *ex parte* order for funds for the defense to retain a forensic DNA analysis of certain evidence collected at the crime scene, [trial counsel] neglected to retain an expert to do so. This potentially could have had a major impact on the outcome of the proceedings.

[Trial counsel] had filed a motion to exclude expert testimony regarding the boot prints found in the victim[']s apartment and their similarity to the boots owned by [the petitioner]. The trial court granted the motion. However, [trial counsel's] representation fell below that expected of criminal defense attorneys when he then allowed Detective Beatty [sic], without objection, to testify at the trial that the pattern on the sole of the boot [the petitioner] wore and those at the crime scene matched.

[Trial counsel's] performance was deficient because he was aware that one of the State's witnesses, Pam Wilson, was a drug abuser and he did not request a special instruction on witness credibility.

[Trial counsel's] representation was deficient because he was aware that Henry Dean's testimony at trial that Mr. Dean had had [the petitioner] arrested

was unverifiable and not proven by the State, he nevertheless did not cross-examine Mr. Dean regarding that.

Though three different times of death had been provided to the defense, and [the petitioner] had requested that [trial counsel] do so, [trial counsel] neglected to file a Motion for Bill of Particulars regarding this ambiguity.

[Trial counsel's] representation was deficient when he neglected to cross-examine Detective Beatty [sic] regarding the "dried red-brown stuff" on the bottom of the [petitioner's] boots when he was aware that the boots had been introduced into the crime scene unprotected and could have thereby be[en] contaminated with the victim's blood.

[citations omitted]. Relying upon these assertions, the petitioner contends that "[b]ecause [trial counsel's] performance fell below that expected of criminal defense lawyers, his deficient performance undermined the confidence in the outcome of the proceedings and this Court should remand for a new trial."

In a very extensive order denying relief, the post-conviction court made the following relevant findings of fact and conclusions of law:

The petitioner alleges counsel was ineffective in failing to request a bill of particulars. He claims he could have an alibi for the alleged time of the offense. He asserts there were inconsistencies between the time of death alleged in the indictment and the time of death cited in medical reports and in testimony as to the last time the victim spoke with his daughter. The indictment alleged that the victim was killed on June 17, 2007. The petitioner was aware of the date of death alleged in the indictment. The petitioner's statement to police acknowledged that he had not seen the victim since Friday the seventeenth and the state never claimed the homicide occurred on any other date than June 17, 2007. The petitioner has failed to prove this allegation by clear and convincing evidence, therefore it is dismissed.

. . . .

The [petitioner] alleges there were fingerprints found in blood at the crime scene and his counsel was ineffective in failing to have those prints identified. The Court finds the petitioner has not presented any proof supporting this allegation. The petitioner has failed to prove this allegation by clear and convincing evidence, therefore it is dismissed.

-10-

The [petitioner] alleges trial counsel was ineffective in failing to have nail clippings from the victim tested for DNA. There has been no showing that there is any non-victim DNA to be tested. The petitioner has failed to prove this allegation by clear and convincing evidence, therefore it is dismissed.

. . . .

The petitioner alleges trial counsel was ineffective in his examination of Detective Batey at trial by failing to impeach him on alleged contradictions in his testimony and failing to present that information in closing arguments. The Court finds that trial counsel argued appropriate issues of credibility to the jury and was not successful in convincing them to find in favor of the [petitioner]. The petitioner has failed to prove this allegation by clear and convincing evidence and has not shown prejudice from the allegation, therefore it is dismissed.

The petitioner alleges trial counsel was ineffective in many inaction[s] involving blood evidence found on his boots, boot prints found near the victim, and testing of the boots. The boots recovered from the petitioner were examined and their prints matched the prints found in the victim's apartment. That evidence was excluded by the Court because the information was provided late to the defense. The petitioner cites to the trial transcript in support of his allegations, alleging testimony indicated that blood was not found on his boots, or when it was found, that it was the result of contamination by the police officers. The testimony at trial failed to support the [petitioner's] allegations despite questioning by defense counsel as to those issues. The petitioner has failed to prove this allegation by clear and convincing evidence and has not shown prejudice from the allegation, therefore it is dismissed.

. . . .

The petitioner alleges trial counsel was ineffective in failing to utilize funding obtained for testing of the blood samples and boot prints taken from the crime scene. "[T]he petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision make during the course of the proceedings." . . . Furthermore, the petitioner makes numerous assertions that the blood evidence was the result of contamination by the police. His

-11-

arguments are conflicting. Finally, he has not demonstrated how the evidence would have supported his assertions. The petitioner has failed to prove this allegation by clear and convincing evidence and has not shown prejudice from the allegation, therefore it is dismissed.

Next, the petitioner argues trial counsel was ineffective in failing to properly cross[-]examine witness Henry Dean. He asserts Dean testified he called the police about the [petitioner] and that trial counsel should have obtained those reports or questioned Dean about them in an effective manner to undermine his credibility. The petitioner failed to present any proof, including any report, supporting his argument. The petitioner has failed to prove this allegation by clear and convincing evidence and has not shown prejudice from the allegation, therefore it is dismissed.

. . . .

The petitioner asserts trial counsel failed to request a special jury instruction regarding alleged inconsistencies in the testimony of witnesses. The Court provided an instruction to the jury regarding the credibility of witnesses. The petitioner has failed to prove this allegation by clear and convincing evidence and has not shown prejudice from the allegation, therefore it is dismissed.

. . . .

The petitioner alleges trial counsel was ineffective in failing to object to testimony from Ms. Wilson at trial that had previously been ruled inadmissible by the court pursuant to Tenn. R. Evid. 404(b). The Court finds that the statements were properly admissible and not in violation of Tenn. R. Evid. 404(b). The petitioner has failed to prove this allegation by clear and convincing evidence and has not shown prejudice from the allegation, therefore it is dismissed.

The petitioner alleges trial counsel failed to object to testimony from Detective Batey about boot-prints found in blood at the crime scene, which he asserts was previously excluded by the Court. The Court did strike a reference by Detective Batey of a "match" of the boot prints and instructed the jury to disregard. This occurrence does not rise to the level of granting post-conviction relief. The petitioner has failed to prove this allegation by clear and convincing evidence and has not shown prejudice from the allegation,

-12-

therefore it is dismissed.

. . . .

The petitioner again argues about trial counsel's failure to request a continuance to obtain an expert regarding the boot print and whether it matched the boot print found at the crime scene. The Court granted the petitioner's motion to exclude expert evidence about a matching print being found at the crime scene. There was limited testimony concerning the fact that prints were found at the scene. No expert testimony was presented regarding a "match." There would be no need for independent testing of the boot print when there is nothing to refute in the evidence. The petitioner has failed to prove this allegation by clear and convincing evidence and has not shown prejudice from the allegation, therefore it is dismissed.

. . . .

The petitioner alleges trial counsel failed to object to testimony excluded pursuant to Tenn. R. Evid. 404(b). He did not provide any specific references. The petitioner has failed to prove this allegation by clear and convincing evidence and has not shown prejudice from the allegation, therefore it is dismissed.

. . . .

The petitioner asserts several arguments regarding whether trial counsel was ineffective in failing to have DNA testing performed on a possible "skin contact" location on the victim's floor and on the victim's clothes. The petitioner has failed to prove this allegation by clear and convincing evidence and has not shown prejudice from the allegation, therefore it is dismissed.

. . . .

The Court accredits the testimony of trial counsel which demonstrated he pursued all legitimate defense strategies on behalf of the petitioner, particularly considering the petitioner's claim of innocence. The jury heard the evidence presented by the case and decided them contrary to the Petitioner's position. The petitioner must show that his counsel's work was not "within the range of competence demanded of attorney's in criminal cases . . . ." The Petitioner has not met this standard by clear and convincing evidence.

-13-

As noted, despite the myriad of grounds contained in his petition, on appeal, the petitioner only alleges that trial counsel was ineffective for: (1) failing to retain an expert to conduct DNA analysis on evidence from the crime scene; (2) failing to object to Detective Batey's testimony regarding the boot print match; (3) failing to request a special jury instruction on credibility; (4) failing to effectively cross-examine Mr. Dean; (5) failing to request a Bill of Particulars regarding the time of death; (6) and failing to cross-examine Detective Batey's testimony regarding the substance on the boots, which trial counsel knew had been introduced unprotected into the crime scene. However, on the record before us, we are simply unable to conclude that the petitioner has put forth evidence that preponderates against the post-conviction court's findings.

At the post-conviction hearing, the petitioner offered no witnesses or documents to support his bare assertions of ineffective assistance of counsel. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Cirm. App. 1990) (stating that "when a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing" in order to show prejudice). He produced no witness concerning what testimony an expert who conducted DNA analysis might have given. The petitioner instead attempted to establish his claims with his own somewhat conflicting testimony. By doing so, he failed to establish that trial counsel's decision not to retain an expert prejudiced his defense. Moreover, the post-conviction court noted in its findings that the State did not introduce DNA evidence linking the petitioner to the crime scene and was not allowed to introduce evidence of the boot print "match" based upon trial counsel's motion to exclude. The court concluded that trial counsel could not be held deficient for failing to retain an expert to conduct independent DNA analysis when there was nothing in the State's evidence to refute.

With regard to the petitioner's allegation that trial counsel was ineffective for failing to object to Detective Batey's testimony regarding a "match" of the boot prints, the court specifically noted that it struck a reference to a match made by Detective Batey and instructed the jury to disregard. It is unclear from the statement whether this was based upon trial counsel's objection or the court's own motion. Nonetheless, even if the action arose from the trial court itself, the jury was instructed to disregard the testimony. Thus, as noted by the post-conviction court, no prejudice can be established. The result is the same whether trial counsel actually objected or the court raised it itself - the jury was instructed to ignore the testimony from Detective Batey.

The petitioner also faults trial counsel for failing to request a special jury instruction on the credibility of witnesses, specifically with regard to Ms. Wilson because of her drug usage. Trial counsel acknowledged that he did not request a special instruction be given, but he requested that a general witness credibility instruction be given based on various

inconsistencies and discrepancies in testimony at trial. In its findings, the post-conviction court found that a general instruction had been given and denied relief on the allegation. The petitioner again put forth no evidence in support of his argument, other than his own testimony that trial counsel should have requested the instruction be given. The decision not to do so was a tactical decision made by trial counsel. There is no evidence in the record that trial counsel was not prepared for trial in this case. As such, the decision is entitled to great deference, and the petitioner has failed to overcome his burden of proving otherwise. *See Cooper*, 847 S.W.2d at 528.

The petitioner also alleges that trial counsel was ineffective for failing to effectively cross-examine witness Henry Dean at trial in order to undermine his credibility. Mr. Dean testified that he had phoned police and had the petitioner arrested. However, no documentation was introduced by the State that the petitioner was ever arrested. Despite the petitioner's assertion to the contrary, trial counsel testified at the hearing that he cross-examined Mr. Dean about the fact that there was no proof that the alleged arrest had occurred. In its findings, the post-conviction court specifically accredited the testimony of trial counsel over that of the petitioner. This court has previously held on numerous occasions that we will not reweigh or reevaluate these type of determinations made by the trier of fact. *See Burns*, 6 S.W.3d at 461. The court also noted that the petitioner had failed to present any proof at the hearing to support his argument. We agree.

We must also agree with the post-conviction court that the petitioner failed to establish his claim of ineffectiveness based upon failing to request a Bill of Particulars with regard to the time of death. The court noted that the indictment alleged that the homicide occurred on June 17. Trial counsel testified that the discrepancies were based on the time of discovery of the body, when the victim was actually pronounced dead, and the testimony of when witnesses had last seen the victim. The petitioner was aware that the indictment alleged that the murder was committed on June 17, and his statement to police indicated he had not seen the victim since that time. In the presentation of its case, the State argued that the homicide was committed on that day. The petitioner acknowledged he had no alibi for that time period; thus, as found by the post-conviction court, he failed to establish his claim. A Bill of Particulars was not necessary, and trial counsel's decision not to file one was not deficient.

The petitioner's final assignment of ineffectiveness on appeal is that trial counsel should have cross-examined Detective Batey regarding the "dried red-brown stuff" on the bottom of the petitioner's boots when he was aware that the boots had been introduced into the crime scene unprotected and could have thereby been contaminated with the victim's blood. However, trial counsel specifically testified that he heavily cross-examined Detective Batey on that matter. Again, the post-conviction court accredited this testimony, and we will not reweigh such determinations. *See id*. Moreover, trial counsel testified that he filed a

motion to suppress based upon the fact that the boots were introduced unprotected into the crime scene. Clearly, trial counsel was aware of the existing issue with the boots and took steps to attempt to utilize that information to benefit the petitioner's case. The petitioner has failed to meet his burden.

Again, we see nothing in the record which preponderates against the post-conviction court's determinations in the case. The record establishes that trial counsel was prepared for trial in the case. He received discovery, discussed those materials with the petitioner, investigated, and cross-examined witnesses effectively at trial. The petitioner has simply failed to establish his claim for relief by clear and convincing evidence. As pointed out by the State, the petitioner's comment at the post-conviction hearing gives insight into the reason for his dissatisfaction with his attorney: "I do not want to be represented or defended; I want them to follow my instructions and my directions." "This is my case, it's mine. I'm going to state it again, I'm 71 years old, this is my case." However, the standard imposed by the petitioner is not the standard for effective assistance of counsel under Tennessee law.

**CONCLUSION**

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_

_____
JOHN EVERETT WILLIAMS, JUDGE

-16-